[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
After a jury trial, Daniel Smith was convicted of two counts of felonious assault and one count of attempted murder, as well as two accompanying firearm specifications on each count. Smith filed a timely appeal.
In his first assignment of error, Smith challenges the sufficiency of the evidence used to convict him of felonious assault and attempted murder. Smith claims that the state failed to prove the requisite mental states for the offenses. In his second assignment of error, Smith challenges the weight of the evidence. We have reviewed the record and found no support for either assignment of error.
If the record contains substantial evidence to support all of the elements of the charged offenses, and that evidence is sufficiently probative of guilt, this court will not reverse on either the sufficiency or the weight of the evidence. See Statev. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The record demonstrates that Smith had an argument with John Carroll, Jr., at Holly Carroll's house in Springdale, Ohio. Smith threatened to return with his gun. Other guests heard the threats and believed them to be true because they knew Smith had a gun. Kenneth Nelson and Holly Carroll went after Smith to stop him. After finding Smith at Nelson's house, Nelson got into an argument with Smith as he tried to stop Smith from going back to Holly Carroll's house. When Smith left Nelson's house, Holly Carroll, fearing that violence might be imminent, went back to her house to get her sixteen-month-old son out of the way.
Crystal Perry then went with Holly Carroll to try again to find Smith before he returned to the scene of the argument. They found Smith walking on the street toward Holly Carroll's house. Perry told Smith that he should not go back to Holly Carroll's house because the baby was there, but Smith said, "Fuck Holly and the baby, I'll shoot them both." Just as Smith lifted his shirt to show Perry the gun in his waistband, Perry heard a shot go off. Perry jumped back a step and looked at Holly Carroll, who was screaming. Perry then heard a "big bang" in her ear, as Smith shot her in the neck.
Holly Carroll testified that when she heard the first shot go off, she turned to hear the second shot being fired at Perry's neck. At the time, Perry was looking at Holly Carroll, not at Smith, and Perry's hands were at her side.
Larry Irvine, a neighbor, was in his house when he heard an argument out in the street. Irvine stepped outside and saw a young woman backing up and a man moving towards her. The man was about an arm's length from the woman as he pointed his gun sideways at her neck and said, "I'll kill you, nigger." Then the gun "kicked, flash and boom, the whole bit; at that point she backed up holding her neck." Irvine recalled that the man's epithet struck him as odd at the time because the young woman was white. The man ran off, and the woman drove away with another young woman. After finding blood on the ground, Irvine called for emergency assistance.
Based on information provided by Smith, a police officer recovered Smith's gun from some bushes near a house in Springdale. An emergency-room doctor testified that Perry's gunshot wound created a substantial risk of death. A firearms examiner testified that Smith's gun did not have a "hair trigger," or an exceptionally easy trigger pull.
Considering that a gun, a deadly weapon, was involved, and that Perry sustained life-threatening injuries, we conclude that there was sufficient evidence to convict Smith of attempted murder and felonious assault. We also conclude that the convictions were not against the manifest weight of the evidence. In light of the overwhelming evidence of guilt presented by the state, we cannot say that the jury clearly lost its way.
Therefore, we overrule both assignments of error and affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.